**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CHARLES A. TREECE,                  )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          1:14-CV-1077
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of             )
Social Security,                    )
                                    )
            Defendant.              )

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Charles A. Treece brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying him old age social security benefits ("Retirement Benefits"). (Docket Entry 2.) Plaintiff filed three motions for default judgment. (Docket Entries 11, 12, 15.) The Commissioner filed a "Motion for First Extension of Time" (the "Extension Motion") (Docket Entry 14), a Motion for Judgment on the Pleadings (the "Commissioner's Motion") (Docket Entry 18), and the certified administrative record (cited herein as "Tr.    ") (Docket Entry 9). For the reasons that follow, the Court should deny Plaintiff's motions for default judgment (Docket Entries 11, 12, 15), deny as moot the Extension Motion (Docket Entry 14), and grant the Commissioner's Motion (Docket Entry 18).

## I.  BACKGROUND

Plaintiff became eligible for Retirement Benefits in April 2003.  (Tr. 129-31.)  At that time, however, Plaintiff was serving a criminal sentence (Tr. 126, 129), which lasted until March 2012 (Tr. 124).  Pursuant to section 202(x) of the Act, the Social Security Administration (the "SSA") suspended Plaintiff's Retirement Benefits during his incarceration.  (Tr. 119-22, 129-31); see also 42 U.S.C. § 402(x)(1)(A)(i) (prohibiting payment of monthly benefits to beneficiary "confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense").

Plaintiff challenged this suspension of his Retirement Benefits, and the SSA upheld the suspension on initial review. (Tr. 33.)  Plaintiff requested reconsideration of the SSA's decision (Tr. 123), and the SSA again determined that Plaintiff could not receive Retirement Benefits from April 2003 through March 2012 because of his incarceration during this period (Tr. 119-22). Plaintiff appealed this decision to an Administrative Law Judge (the "ALJ") (Tr. 128), who conducted a hearing, at which Plaintiff appeared pro se and testified (Tr. 132-49).  The ALJ issued a decision upholding the suspension of Plaintiff's Retirement Benefits from April 2003 through March 2012.  (Tr. 28-31.)

Plaintiff appealed the ALJ's decision to the Appeals Council (Tr. 21), which upheld the suspension (Tr. 9-10).[1]

Plaintiff thereafter filed the current action to obtain judicial review of the Appeals Council's decision. (Docket Entry 2.)[2] Along with his Complaint (Docket Entry 2), Plaintiff filed an Application to Proceed In Forma Pauperis (the "IFP Application") (Docket Entry 1; see also Docket Entries 3 (Amended Application), 4 (Supplement re Application)). The Court granted Plaintiff's IFP Application (Docket Entry 5 at 1) and directed the Clerk "to prepare and issue a summons for each defendant required by law to be served in this matter and to forward the summons to the United States Marshal for service on each such defendant" (id.). Accordingly, the Clerk prepared a "Summons in a Civil Action" for (1) the Office of the United States Attorney in the Middle District of North Carolina, (2) the U.S. Attorney General, and (3) the Commissioner. (Docket Entry 6.) Subsequently, the United States Marshal filed an Affidavit of Service (the "Affidavit of Service")

---

[1] While incarcerated, Plaintiff filed an earlier action against the SSA, alleging a violation of his constitutional rights based on his failure to receive his Social Security retirement checks. See Treece v. Wilson, 2:05-CV-799-IPJ-HGD, Docket Entry 1-4 (N.D. Ala. 2005). The Eleventh Circuit affirmed the district court's dismissal of that action. Treece v. Wilson, 212 F. App'x 948, 952 (11th Cir. 2007).

[2] "SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision." Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

3

(Docket Entry 7), verifying that he served the Office of the United States Attorney in the Middle District of North Carolina on March 9, 2015 (id. at 1-2), the U.S. Attorney General on January 28, 2015 (id. at 3-4), and the Commissioner on February 11, 2015 (id. at 5-6). Accordingly, the Commissioner's deadline for responding to the Complaint was May 8, 2015. See Fed. R. Civ. P. 4(i) and 12(a)(2); see also (Docket Entry 7 (noting the Commissioner's answer due by "5/8/15")).

On May 5, 2015, the Commissioner filed her Answer (Docket Entry 8) and the Clerk notified the parties that this action would proceed by motions, that Plaintiff must file his motion by June 22, 2015 (i.e., 45 days from May 5, 2015), and that the Commissioner must file any motion opposing Plaintiff's motion within 60 days of Plaintiff's motion (the "Clerk's Directive") (Docket Entry 10). Specifically, the Clerk's Directive stated:

> The Court has directed me to inform the parties that this action will proceed by motions made pursuant to Fed. R. Civ. P. 7(b). The plaintiff must file a motion for a judgment reversing or modifying the decision of the Commissioner of Social Security, or remanding the cause for a rehearing. If counsel for the defendant opposes plaintiff's motion, he/she shall file a motion for a judgment affirming the decision of the Commissioner.

> Plaintiff's motions must be filed within 45 days from the date of this letter. The motion must state plaintiff's objections to the Commissioner's decision or any aspect of the record which counsel contends is erroneous. Plaintiff must file a brief with the motion. The brief shall be no more than 20 pages in length and divided into the following sections. The first section should briefly set out the procedural history of the case and the relief sought. A recitation of the general facts

4

of the case is unnecessary. Rather, the pertinent facts
should be identified in the argument section. The second
section should state in concise fashion each of the
issues for review as is done in an appellate brief.
Thereafter, each such issue should be discussed in a
separate section which sets out the argument for each of
the issues with page citation to the record for the
evidence that supports the issue, along with citation and
discussion of any contrary evidence. (The mere citation
of an exhibit number is not sufficient. Rather, the
actual page(s) citation must be given.)

Defendant's motion and brief must be filed within 60
days after the filing of plaintiff's motion and brief.
The brief must not only be responsive to the plaintiff's
motion and brief; but shall be in a similar format as
plaintiff's wherein each of plaintiff's issues are
separately discussed with citations to the record.

Failure to comply with this directive will be
considered a violation of Local Rules 7.2 and 7.3, as
more completely specified by the directives contained in
this letter, for which sanctions may be imposed as
provided by Local Rule 83.4(a).

(Id. at 1-2.)

To date, Plaintiff has not filed a motion that complies with

the Clerk's Directive. (See Docket Entries dated May 5, 2015, to

present.) The Commissioner has, however, filed a motion requesting

that the Court affirm her decision denying Plaintiff Retirement

Benefits during his period of criminal incarceration (Docket Entry

18 at 8), to which Plaintiff has responded (Docket Entry 20).[3]

---

[3] On September 23, 2015, the Commissioner filed the Extension
Motion, requesting an additional 30 days to file a dispositive
motion in this case, and stating that "a case manager recently
notified the Commissioner that a dispositive motion was due, but
had not been filed." (Docket Entry 14 at 1.) Plaintiff objected.
(Docket Entry 16.) The Clerk's Directive obliged the Commissioner
to file a dispositive motion within 60 days of Plaintiff's filing.
(See Docket Entry 7 at 1.) Plaintiff did not file such a

5

## II. DISCUSSION

### A.  Plaintiff's Motions for Default Judgment

In his first motion for default judgment, Plaintiff contends that "defendants in this case were serve[d] February 11, 2015 and thus [the Commissioner] was in default when answering on May 5, 2015."  (Docket Entry 11 at 1.)  In his second motion for default judgment, Plaintiff contends, in relevant part, that "defendant['s] response to petitioner['s] claims were untimely, thus defendant was in default . . . [and t]he Court was incorrect in stating defendant['s] answer was due by 05/05/2015 when defendants [sic] were served on February 11, 2015."  (Docket Entry 12 at 1.)  In his third motion for default judgment, Plaintiff contends that this Court should enter default judgment "because of the following Facts[:]  1-Eric Holder Attorney General who was served on February 3, 2015 and has yet to Respond to the complaint.  2-[The Commissioner] was served on February 11, 2015 and answer dated May 5, 2015 and Thus in default."  (Docket Entry 15.)[4]

---

dispositive motion, and thus, the deadlines in the Clerk's Directive did not constrain the timing of the Commissioner's filings. Accordingly, the Extension Motion is unnecessary and the Commissioner's Motion is timely under Rule 12(c) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(c) ("After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.")

[4]  To the extent Plaintiff alleges that the U.S. Attorney General failed to timely answer Plaintiff's Complaint (Docket Entry 15), Plaintiff's contention is misplaced.  Although Rule 4(i) requires mailing a copy of the complaint and summons to the U.S. Attorney General to effectuate service on a federal agency, that

"To serve a United States agency . . . or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, . . . officer, or employee." Fed. R. Civ. P. 4(i)(2). "To serve the United States, a party must deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought" and "send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1)(A)-(B). In other words, service on the Commissioner was not effective until Plaintiff served the U.S. Attorney General, the Commissioner, and the United States Attorney for this District. <u>See</u> Fed. R. Civ. P. 4(i). Further, by rule, "the United States, a United States agency, or a United States officer or employee sued only in an official capacity" must serve an answer to a complaint within 60 days "after service on the United States attorney." Fed. R. Civ. P. 12(a)(2).

Here, the United States Marshal Service served the United States Attorney for the Middle District of North Carolina on March 9, 2015, having previously served the Commissioner and Attorney General. (Docket Entry 7.) The Commissioner thus had to answer within 60 days of March 9, 2015. <u>See</u> Fed. R. Civ. P. 12(a)(2).

---

mailing does not transform the U.S. Attorney General into a named defendant with an obligation to respond separately to Plaintiff's Complaint. <u>See</u> Fed. R. Civ. P. 4(i).

Accordingly, the Commissioner timely filed her Answer on May 5, 2015. (Docket Entry 8.) Therefore, Plaintiff's three motions for default judgment should be denied.[5]

## B. The Commissioner's Motion

The Commissioner's Motion requests that this Court affirm her decision upholding the SSA's denial of Plaintiff's Retirement Benefits during his period of criminal incarceration. (Docket Entry 19 at 1.) Plaintiff filed a letter in response to the Commissioner's Motion. (Docket Entry 20 at 1.)

## i. Standard of Review

Federal law authorizes judicial review of the Commissioner's denial of social security benefits, 42 U.S.C. § 405(g), but "the scope of [the Court's] review of [such] a decision . . . is extremely limited," Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court "must uphold the factual findings of the ALJ [as adopted by the Commissioner] if they are supported by substantial

---

[5] The undersigned also notes that, "[e]ven had the time limit passed, [P]laintiff still would not be entitled to default. Before a default judgment can be entered against the United States government, or an officer or agency thereof, [P]laintiff must 'establish his claim or right to relief by evidence satisfactory to the Court.' Fed. R. Civ. P. 55(e). Plaintiff has not provided . . . any evidence whatsoever which would dictate the granting of a default judgment." Simmons v. United States Parole Comm'n, 590 F. Supp. 1221, 1222 (D.D.C. 1984); see also Sun v. United, 342 F. Supp. 2d 1120, 1124 (N.D. Ga. 2004) ("Viewing Rule 55(e) as more restrictive than the typical standard for default, courts have held that entry of default judgment against the United States[, its officers, or its agencies] will not be based simply on a failure to file an answer or responsive pleading." (citing Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977)).

evidence and were reached through application of the correct legal standard." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "The findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).

## ii. Analysis

The Commissioner contends that, under section 202(x), the SSA properly suspended Plaintiff's Retirement Benefits during his criminal incarceration. (Docket Entry 19 at 3-4.) Section 202(x) provides that Retirement Benefits shall not be paid "to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual . . . is confined in jail, prison, or other penal

institution or correctional facility pursuant to his conviction of a criminal offense." 42 U.S.C. § 402(x)(1)(A).

Here, the record establishes that Plaintiff was convicted of armed robbery and, as a result, served a prison sentence from January 23, 1995 through March 14, 2012. (See Tr. 124 ("Diminution of Sentence," stating Plaintiff "shall be released [from incarceration] in the same manner as if on parole on March 14, 2012"), 126 ("DPS&C Corrections Services Master Record" showing Plaintiff's conviction for armed robbery and 35-year prison sentence beginning January 23, 1995).) The record further shows that Plaintiff became eligible for Retirement Benefits in April 2003. (Tr. 129.) Pursuant to section 202(x), the SSA suspended Plaintiff's retirement benefits during his incarceration. (Tr. 119-20; see also Tr. 129 (SSA letter stating that Plaintiff's application for Retirement Benefits is approved and his entitlement date is April 2003, but that the SSA cannot pay Plaintiff his Retirement Benefits because he is "imprisoned for the conviction of a crime").) Following his release from prison, Plaintiff began receiving Retirement Benefits. (Tr. 137; see also id. (Plaintiff testifying during his hearing with the ALJ that he did not receive Retirement Benefits until April 2012).)

Based on this record, the SSA committed no error in applying section 202(x) in this case. That section unequivocally prohibits the SSA from paying Retirement Benefits to an individual while he

10

is incarcerated for more than 30 continuous days following conviction of a crime. 42 U.S.C. § 402(x)(1)(A). Under this provision, although Plaintiff became eligible for Retirement Benefits in April 2003, the SSA could not pay him those benefits due to his criminal incarceration. See id. Thus, substantial evidence exists to affirm the suspension of Plaintiff's Retirement Benefits from April 2003 through March 2012.

### iii. Plaintiff's Response and Remaining Arguments

In response to the Commissioner's Motion, Plaintiff submitted the following two-sentence letter:

> Plaintiffs [sic] motion for Judgement on the Pleadings and Defendants [sic] "conclusion" on Document 19 Page 8 of 9 which supports Plaintiffs [sic] allegations that "Plaintiff was entitled to Retirement Benefits under the Act during his incarceration." And further Plaintiff urges this Honorable Court to order the Social Security Commissioner to pay Plaintiff the Social Security Retirement Benefits owed, plus interest.

(Docket Entry 20 at 1.) Plaintiff's letter relies on an apparent scrivener's error in the Commissioner's Memorandum of Law, which states, "the Commissioner submits that substantial evidence and the correct application of law supports her decision that Plaintiff was entitled to [R]etirement [B]enefits under the Act during his incarceration." (Docket Entry 19 at 8 (emphasis added).)

It is readily apparent that the Commissioner's Memorandum should have read "was not entitled" to Retirement Benefits. Of particular note, the Memorandum's following sentence makes clear that the Commissioner "requests that the Court affirm her final

11

decision" (id.), which upheld the suspension of Plaintiff's Retirement Benefits during his incarceration (Tr. 9-10). No basis exists for the Court to ignore the Memorandum's preceding seven pages of argument in support of the SSA's suspension of Plaintiff's Retirement Benefits during his incarceration. See generally Martin v. Colvin, Civil Action No. 9:14-119-RBH-BM, 2015 WL 3889250, at *5 (D.S.C. June 24, 2015) (unpublished) (noting that, even where "the ALJ's finding contains a typo," the "typo would not constitute a reason to overturn the administrative finding").

Plaintiff's Response contains no other argument against the Commissioner's Motion (see Docket Entry 20), and as discussed above, Plaintiff did not file a dispositive motion pursuant to the Clerk's Directive (see Docket Entries dated May 5, 2015, to present (showing Plaintiff has filed no motion that complies with the Clerk's Directive)). In light of Plaintiff's pro se status and related right to liberal construction of his filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the undersigned Magistrate Judge takes note that Plaintiff raised several statutory and constitutional challenges in his Complaint (Docket Entry 2) and "Motion to deny Defendant's motion for an extension of time" ("Opposition") (Docket Entry 16). As a result, the discussion below will briefly address Plaintiff's remaining arguments.

### a. Fraudulent/False Social Security Number

First, Plaintiff alleges that he did not receive Retirement Benefits while incarcerated because the SSA used a "Fraudulent Social Security Number" in its response to his 2004 appeal. (Docket Entry 2 at 4 (citing Docket Entry 2-2); see also Docket Entry 16 at 1 (stating that the SSA denied Plaintiff's request for Retirement Benefits "using a false Social Security number").)  The SSA's response letter (to which Plaintiff refers in his Complaint) expressly states that Plaintiff's Retirement Benefits were being withheld under "Section 202(x) of the [Act]," and that "[n]o one is stealing [Plaintiff's] checks" because "[t]here are no checks being paid [due to Plaintiff's] incarcerat[ion]." (Docket Entry 2-2 at 1; Tr. 104.)  The letter, thus, undercuts Plaintiff's contention that someone else received his Retirement Benefits under a fraudulent Social Security number.

Furthermore, Plaintiff made a similar argument in his second appeal of the SSA's decision. (See Tr. 79.)  In response, the SSA sent Plaintiff another letter (Tr. 119-22), this time using his correct social security number (id. at 119), and affirming its prior decision to deny Plaintiff Retirement Benefits under section 202(x) (id. at 119-20). Based on this record, substantial evidence exists that the SSA suspended Plaintiff's Retirement Benefits during his incarceration pursuant to section 202(x), and not because of a fraudulent Social Security number.

13

**b. The ALJ's Error of Law**

Second, Plaintiff contends that the Appeals Council notified him that they found an error of law in this case but denied his appeal. (Docket Entry 16 at 1 (citing id. at 2 (Notice of Appeals Council Action stating, "[i]n your case, we found that there is an error of law")); see also (Tr. 12 (Notice of Appeals Council Action)).) This contention does not affect the outcome of this case.

The Appeals Council's decision stated that "[the ALJ] inadvertently found the [SSA] could not pay [Plaintiff] for the months of April 2003 through March 2012 due to incarceration for the conviction of a felony." (Tr. 9.) The Appeals Council explained that "Public Law 106-170, effective April 1, 2000 created two significant changes to the prisoner suspension policies." (Tr. 10.) First, "[t]he court must charge and convict the beneficiary with a criminal offense, and [second] [a] beneficiary must remain in the institution for more than 30 continuous days before the [SSA] will suspend benefits." (Id.)

Under these provisions, it was unnecessary to find that Plaintiff was convicted of a "felony," but only that Plaintiff was convicted of a "criminal offense," which resulted in his confinement in an institution for more than 30 continuous days.

14

(See id.; see also 42 U.S.C. § 402(x)(1)(A).)[6]   Applying this standard, the Appeals Council held that "the [SSA] properly suspended the [Retirement B]enefits of [Plaintiff] during the period April 2003 through March 2012, due to confinement of more than 30 continuous days pursuant to the conviction of a criminal offense."   (Tr. 10.)   The ALJ's finding that Plaintiff was convicted of a "felony," therefore, did not affect the SSA's application of section 202(x) in this case.

---

[6] In considering 42 U.S.C. § 402(x) in Plaintiff's earlier action, the Eleventh Circuit explained:

> Prior to the 1994 amendment . . ., § 402(x) allowed for the suspension of benefits to any person during any month in which he was incarcerated pursuant to a felony conviction unless he satisfactorily participated in a court-approved rehabilitation program.   42 U.S.C. § 402(x)(1994).   The Social Security Domestic Employment Reform Act of 1994, Pub.L. No. 103-387, 108 Stat. 4071, 4076 (1994), . . . amended § 410 by replacing the "felony" terminology with "an offense punishable by imprisonment for more than 1 year," and abolishing the rehabilitation-program exception.   Id. [Plaintiff]'s incarceration is pursuant to a felony conviction, and he has never alleged eligibility for the rehabilitation-program exception.   In 1999, the statute was amended by the Ticket to Work and Work Incentives Improvement Act of 1999, Pub.L. No. 106-170, 113 Stat. 1860, 1908 (1999), which eliminated the clause "an offense punishable by imprisonment for more than 1 year" and substituted the language "a criminal offense."   Id. Because [Plaintiff] became eligible for [Retirement B]enefits in 2003, this latest version of § 402(x) applies to him. [Plaintiff] has never contended that his offense was not "punishable by imprisonment of more than 1 year" or a "criminal offense."

Treece v. Wilson, 212 F. App'x 948, 951 n.5 (11th Cir. 2007).

15

## c. Constitutional Challenges

Third, Plaintiff's Complaint contends that the denial of his Retirement Benefits violated the Constitution, alleging:

> [D]enial of ARREARS of $75,000.00 is not rationally connected to a legitimate non-punitive purpose, it is further punishment for a crime committed under state law which is double jeopardy and violates the Ex-posto-Clause, U.S.C.A. Cont.Art. 1,9,cl,3,cl,1.
>
> Furthermore [the] forfeiture is a punishment and violates Apprendi [v.] New Jersey[, 530 U.S. 466 (2000)] and Austin [v. United States], 509 U.S. 602 [(1993)].
>
> . . . .
>
> The application of 202(X) must ascertain whether the legislator enacting the section in question indicated either express or implied preference for civil or a criminal sanction, the legislators did not indicate either, thus 202(X) is null and void, because there is no escaping the fact that 202(X) is punishment being administered by the [SSA].

(Docket Entry 2 at 5-6 (underline added).) In a similar manner, Plaintiff's Opposition contends, "Defendants are violating Plaintiff's due process, equal protection, ex post facto, double jeopardy, bill of attainder, takings and excessive fines clause of the U.S. Constitution." (Docket Entry 16 at 1).

To the extent Plaintiff alleges that section 202(x) is an ex post facto law or bill of attainder, those contentions lack merit, because "the suspension of [] [P]laintiff's benefits does not constitute punishment." Jones v. Heckler, 774 F.2d 997, 999 (10th Cir. 1985) (citing Flemming v. Nestor, 363 U.S. 603 (1960) (holding that retirement benefits are noncontractual government benefits,

16

the denial of which does not constitute punishment within the meaning of the bill of attainder clause)); see also Davis v. Brown, 825 F.2d 799, 800 (4th Cir. 1987) ("not[ing] with approval that the Tenth and Eighth Circuits have upheld the suspension of disability benefits [while the claimant is incarcerated], finding that the suspension is not punishment"); Andujar v. Bowen, 802 F.2d 404, 405 (11th Cir. 1986) (holding that § 402(x)(1) is constitutional and finding "no violation of due process, no punishment without trial, and no bill of attainder or ex post facto law").

Along those lines, Plaintiff's contention that section 202(x) is a criminal, and not civil, penalty, which violates the Double Jeopardy Clause (see Docket Entry 2 at 6), similarly fails.  In Hudson v. United States, 522 U.S. 93 (1997), the Supreme Court adopted a two-step process to determine whether a penalty is civil or criminal:  "(1) statutory construction to determine whether Congress indicated an express or implied preference for one label or the other; and if Congress intended to establish a civil penalty, (2) an evaluation of whether the statutory scheme [is] so punitive either in purpose or effect as to transform the intended civil sanction into a criminal penalty." Louis v. Commissioner of Internal Revenue, 170 F.3d 1232, 1234 (9th Cir. 1999) (internal quotation marks omitted) (citing Hudson, 522 U.S. at 493).  As the court in Casalvera v. Commissioner of Social Security, 998 F. Supp. 411 (D. Del. 1998) explained, when applying the Hudson analysis to

17

the suspension of a prisoner's Retirement Benefits under section 202(x), "Congress clearly intended the provision precluding felons in confinement from receiving [R]etirement [] [B]enefits to be civil in nature," and the sanction is not so punitive as to transform the sanction into a criminal punishment.  Id. at 415. Because section 202(x) is not a criminal punishment, it does not violate the Double Jeopardy Clause.  Id. at 415-16; see also Jones, 774 F.2d at 998 ("The bill of attainder, double jeopardy, and ex post facto arguments [against section 202(x)] are also without merit.  Essential to the success of these arguments is the validity of characterizing the suspension of benefits as punishment.")

Moreover, because section 202(x) is not a criminal punishment, Austin is inapplicable.  In Austin, the court deemed forfeiture of the petitioner's property under 21 U.S.C. §§ 881(a)(4) and (a)(7) punishment and therefore "subject to the limitations of the Eighth Amendment's Excessive Fines Clause."  Id. 509 U.S. at 622. Here, the "suspension of Social Security benefits during incarceration constitutes neither punishment nor an excessive fine," and, therefore, does not "violate[] . . . the Eighth Amendment." Treece v. Wilson, 212 F. App'x 948, 952 (11th Cir. 2007); see also id. ("Plaintiff has no legal entitlement to [Retirement B]enefits while he is incarcerated, and therefore, the suspension constitutes neither a 'taking' without just compensation under the Fifth Amendment nor an unlawful seizure under the Fourth Amendment.").

18

Additionally, section 202(x) does not violate equal protection or due process, Davis, 825 F.2d at 801, and Apprendi, which held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," id. 530 U.S. at 490, has no application to this case.[7]

## d. Bennett v. Arkansas and 42 U.S.C. § 407

Fourth, Plaintiff argues that the Supreme Court's decision in Bennett v. Arkansas, 485 U.S. 395 (1988), prevents the SSA from withholding his Retirement Benefits while he was incarcerated. (Docket Entry 2 at 1, 4-6; Docket Entry 16 at 1.)  Specifically, Plaintiff contends:

> Bennett . . . hold[s] that 42/407 (A)(B) []No other provision of law, Enacted before or after the enacted section may be construed to limit supersede or modify the provisions except to the extent that it does so by

---

[7] Plaintiff's second motion for default judgment states: "'Civil Forfeitures Constitute punishment' See: U.S. v. Halper 490 U.S. 4-35, 109 S.C.T. 1892 (1989) [Plaintiff] avers that the seizure of his old age Social Security benefits violates the 14th amendment of the Constitution." (Docket Entry 12 at 1.)  Section 202(x) is a federal law and therefore the Fourteenth Amendment not apply to the instant analysis.  See U.S. Const. amend. XIV, § 1 ("No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (emphasis added)); see also Sun v. United States, 342 F. Supp. 2d 1120, 1124 (N.D. Ga. 2004) ("The Fourteenth Amendment only applies to the states, not the federal government.").  To the extent Plaintiff alleges that section 202(x) violates the due process or equal protection guarantees of the Fifth Amendment, the Fourth Circuit has determined that it does not.  Davis, 825 F.2d at 799-801.

19

express reference this section. 205(g) of the Social Security Act does not reference 42/407(A)(B).

U.S. Supreme Court decision:

<u>Bennett</u> . . . when the agency denies [Plaintiff] ARREARS benefits, when there is an implied contract between [Plaintiff] and the Administration.

. . . .

Social Security Act 42/407(A) holds "The Right of Any Person to any Future payment under This sub-chapter shall not be transferable or assignable at law or in equity, And none of them monies paid or payable or rights existing under this Sub-Chapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law no other provision of law, enacted before or after this decision shall over rule this U.S. Supreme Court decision," such as 202(X) of the Social Security Act. Due to the process of Social Security Act 202(X) for this sections manifests a patently arbitrary classification, utterly lacking justification.

. . . .

[Plaintiff] avers the [SSA] possess no authority to supersede a U.S. Supreme Court decision <u>Bennett</u> . . . nor over rule 42/407(A)(B). SEE: [<u>Dickerson v. United States</u>, 530 U.S. 428] (2000).

(Docket Entry 2 at 4-6 (underline added); <u>see also</u> Docket Entry 16 at 1 ("42 U.S.C. [§] 407(A) is controlling in this case, it unambiguously rules out any attempt to attach Social Security benefits. See: <u>Bennett v. Arkansas</u>" (underline added)).)

The first case cited by Plaintiff involved a challenge to an Arkansas law that authorized Arkansas to seize a prisoner's property, including his federal social security benefits, to help offset the cost of maintaining the prison system. <u>Bennett</u>, 485

U.S. at 396.  The petitioner challenged Arkansas's law, contending that it "violate[d] the Supremacy Clause of the Federal Constitution because it permit[ted] the State to attach funds that federal law exempts from legal process." Id.  The Bennett court noted that 42 U.S.C. § 407(a) "provides that 'none of the moneys paid or payable . . . under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process,'" and struck down the Arkansas law, concluding that it created "a 'conflict' under the Supremacy Clause" because "[s]ection 407(a) unambiguously rules out any attempt to attach Social Security benefits." Bennett, 485 U.S. at 396-97.

By contrast, Plaintiff challenges section 202(X), a federal law.  See 42 U.S.C. § 402(x).  Therefore,

> [w]e do not have here a state trying to overcome the prohibitions of § 407(a).  "The Supremacy Clause obliges the States to comply with all constitutional exercises of Congress' power." *Bush v. Vera*, 517 U.S. 952, 991–92 (1996) (O'Connor, J., concurring) (citing U.S. Const., Art. VI, cl. 2).  The Supremacy Clause would thus provide no avenue for rendering either 42 U.S.C. § 402(x) or 20 C.F.R. § 404.468 unconstitutional.  "Section 407(a) was not intended to outlaw a procedure expressly authorized by the [SSA]'s own regulations." *King v. Schafer*, 940 F.2d 1182, 1185 (8th Cir. 1991) (addressing § 407(a) in different context).  It was likewise not intended to outlaw a practice expressly authorized by another provision of the same statute.

Dail v. United States, No. 3:00-CV-2354-R, 2001 WL 586693, at *5 (N.D. Tex. May 22, 2001) (unpublished).  Because Plaintiff does not allege that a state law conflicts with a federal law (see Docket

21

Entries 2, 16), <u>Bennett</u> and the Supremacy Clause are inapposite to the instant analysis.

Plaintiff's related argument essentially contends that withholding his Retirement Benefits while he was incarcerated constituted "other legal process" under 42 U.S.C. § 407(a). (<u>See</u> Docket Entry 2 at 4-6; Docket Entry 16 at 1.) However, "[o]ther legal process within the meaning of § 407(a) does not include Congressional acts or the implementation of regulations pursuant to Congressional delegation. The suspension of benefits by operation of 42 U.S.C. § 402(x) or 20 C.F.R. § 404.468 are not inconsistent with 42 U.S.C. § 407(a)." <u>Dail</u>, 2001 WL 586693, at *5.

Further, Plaintiff cites to <u>Dickerson</u>, which held that "*Miranda* announced a constitutional rule that Congress may not supersede legislatively." <u>Id.</u> 530 U.S. at 444. Here, as discussed in Section (II)(B)(iii)(c), in enacting section 202(x), Congress did not supersede a constitutional rule.

**e. Declaratory and Injunctive Relief**

Fifth, Plaintiff contends that:

because [he] is praying for declaratory and injunctive relief in this action, the [C]ourt can not dismiss this action under 28/1915 (E)(2(B1) and[ ]42/1997(E)(E) Civil Rights for institutionalized persons Act as cited in <u>Denton [v.] Hernandez</u>, 504 U.S. 25 [(1992)] and [<u>Neitzke v.] Williams</u>, 490 U.S. 319 [] (1989) [a]lso see: C.F. <u>Richards [v.] Jefferson County</u>, [517 U.S. 793 (1996)] which holds "Adjudiciation as a matter of Federal due process when [Plaintiff] is not represented by counsel." Thus the [C]ourt can not bind him or bar him from

22

challenging an alleged unconstitutional deprivation of his earned arrears benefits.

(Docket Entry 2 at 5 (underline added).)

The undersigned Magistrate Judge previously granted Plaintiff's request to proceed in forma pauperis without paying filing fees under 28 U.S.C. § 1915(a). (Docket Entry 5.) Furthermore, disposition of this case on the merits does not contravene section 1915(e) or section 1997(e). The first two cases that Plaintiff cites, Denton and Neitzke, both involve the standard for dismissing actions as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), see Denton, 504 U.S. at 32 (holding that when reviewing an in forma pauperis complaint for frivolousness, courts have the authority to "pierce the veil of the complaint's factual allegations [which] means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations" (internal quotation marks omitted)); Neitzke, 490 U.S. at 331 ("hold[ing] that a complaint filed *in forma pauperis* is not automatically frivolous within the meaning of [section 1915] because it fails to state a claim"), an analysis this Memorandum Opinion does not undertake.

Moreover, "[t]he Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq*. . . ., was enacted primarily to ensure that the United States Attorney General has 'legal standing to enforce existing constitutional rights and Federal statutory

rights of institutionalized persons.'" <u>Patsy v. Board of Regents of State of Fla.</u>, 457 U.S. 496, 507-08 (1982) (quoting H.R. Conf. Rep. No. 96-897, p. 9 (1980)). As discussed in Section (II)(B)(iii)(c), section 202(x) withstands Plaintiff's constitutional and statutory challenges.

Additionally, the third case cited by Plaintiff, <u>Richards</u>, does not entitle him to an attorney in this case. (<u>See</u> Docket Entry 2.) It involved a state supreme court's ruling that an earlier action, as to which the petitioners received no notice and enjoyed no representation, barred the petitioners' challenge to their county's occupation tax. <u>Richards</u>, 517 U.S. at 796. The <u>Richards</u> court held that, "[b]ecause [the] petitioners received neither notice of, nor sufficient representation in, the [earlier] litigation, that adjudication, as a matter of federal due process, [could] not bind them and thus [could] not bar them from challenging an allegedly unconstitutional deprivation of their property." <u>Id.</u> at 805. Here, neither party alleges that an earlier action, as to which Plaintiff did not have sufficient notice or representation, bars Plaintiff's current lawsuit. (<u>See</u> Docket Entry 2.)

**f.  Administrative Forfeiture**

Sixth, Plaintiff contends that "Federal [R]ule[] of [C]ivil [P]rocedure 41(g) holds a forfeiture hearing must be held prior to an [a]dministrative forfeiture[, <u>s]ee</u>: <u>Dusenberry [v. United</u>

24

<u>States</u>, 534 U.S. 161] (2002)." (Docket Entry 2 at 5 (underline added).)[8] The cited Rule generally addresses dismissal of actions, not administrative forfeitures. <u>See</u> Fed. R. Civ. P. 41. Moreover, <u>Dusenberry</u> involved a prisoner's motion under Federal Rule of Criminal Procedure 41 to recover property and funds seized from his residence during execution of a search warrant, <u>id.</u> 534 U.S. at 164-65. The factual matter in Plaintiff's Complaint does not contend that any of his property was seized pursuant to a search warrant, or otherwise in violation of the Fourth Amendment. (<u>See</u> Docket Entry 2.) <u>Dusenberry</u> thus lacks any application to the current action.

**g. Appointment of Counsel**

Seventh, Plaintiff asserts that the "Social Security Act 42/405/(j)(h) provides for appointment of counsel[, but Plaintiff] has never been appointed counsel[, s]ee[] <u>Sullivan v. Hudson</u>, 490 U.S. 877 [] (1989)." (Docket Entry 2 at 5 (underline added).) Contrary to Plaintiff's assertion, neither the statutory provisions nor the case law cited by Plaintiff requires appointment of counsel in this case. <u>See</u> 42 U.S.C. § 405(h) (explaining the "[f]inality of [the] Commissioner's decision") and (j) (providing the requirements for determining and paying suitable "[r]epresentative payees"); <u>Sullivan</u>, 490 U.S. at 892 ("conclud[ing] that where a

_____

[8] There is no subsection "(g)" in Federal Rule of Civil Procedure 41. <u>See</u> Fed. R. Civ. P. 41 (containing subsections (a) through (d)).

court orders a remand to the Secretary in a benefits litigation and retains continuing jurisdiction over the case pending a decision from the Secretary which will determine the claimant's entitlement to benefits, the proceedings on remand are an integral part of the 'civil action' for judicial review, and thus attorney's fees for representation on remand are available subject to the other limitations in the [Equal Access to Justice Act, 28 U.S.C. § 2412(d)]").

## h. Court's Authority to Adjust Remedies

Eighth, Plaintiff contends that "Bell v. Hood, 327 U.S. 678 [(1946)] and [Boumediene v.] Bush, [553] U.S. [723] (2008) holds [sic] the courts will adjust their remedies so as to provide the necessary relief." (Docket Entry 2 at 5.) Neither of these cases is relevant to the instant action or precludes entry of judgment in the Commissioner's favor. See Bell, 327 U.S. at 679, 685 (holding the district court had jurisdiction to hear case involving federal agents' alleged violations of the petitioners' rights under the Fourth and Fifth Amendments, where the petitioners alleged "that the[ir] damages were suffered as a result of the [agents] imprisoning the petitioners in violation of their Constitutional right to be free from deprivation of their liberty without due process of law, and subjecting their premises to search and their possessions to seizure, in violation of their Constitutional right to be free from unreasonable searches and seizures"); Boumediene,

533 U.S. at 732, 798 (concluding that "aliens designated as enemy combatants and detained at the United States Naval Station at Guantanamo Bay, Cuba" were entitled to "invoke the fundamental procedural protections of habeas corpus").

**i. Implied Contract**

Ninth, Plaintiff alleges that "[he] had an implied contract with the [SSA] through the signature he placed on the W-2 forms throughout his work history and the Employee Retirement Income Security Act 18/1029, also under 29/ERISA." (Docket Entry 2 at 5.) Contrary to Plaintiff's allegation, he had no contractual right to receive Retirement Benefits, because "Social [S]ecurity benefits are noncontractual benefits under a social welfare system and Congress has reserved the right to modify the scheme of benefits." Davis, 825 F.2d at 800 (citing Flemming v. Nestor, 363 U.S. 603, 611 (1960)).

In sum, the Fourth Circuit, in considering the suspension of a prisoner's Retirement Benefits under section 202(x), has explained that "[t]his blanket suspension is consistent with the statutory grant of discretion and rationally promotes the legitimate underlying congressional policy goal of conserving scarce social security resources where a prisoner's basic economic needs are provided from other public sources." Davis, 825 F.2d at 801. Correspondingly, the Court should affirm the SSA's decision to deny Plaintiff Retirement Benefits while he remained

27

incarcerated for conviction of a criminal offense. <u>See</u> 42 U.S.C. § 402(x).

### III. CONCLUSION

The Commissioner timely answered and has established entitlement to judgment as a matter of law.

**IT IS RECOMMENDED** that the Commissioner's Motion for First Extension of Time (Docket Entry 14) be denied as moot.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motions for default judgment (Docket Entries 11, 12, 15) be denied.

**IT IS FURTHER RECOMMENDED** that the Commissioner's Motion for Judgment on the Pleadings (Docket Entry 18) be granted.

<u>      /s/ L. Patrick Auld      </u>
**L. Patrick Auld**
**United States Magistrate Judge**

January <u> 19 </u>, 2016

28